| | AUSA: | Jonathan Goulding | Telephone: | (313) 226-9742 |
|---|---|---|---|---|
| Agent: | | James Louks | Telephone: | (202) 815-5273 |

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the

## Eastern District of Michigan

United States of America
   v.

VASCONCELOS, Tulio Da Mata

Case No.
Case: 2:20−mj−30165
Assigned To : Unassigned
Assign. Date : 4/29/2020
Description: CMP USA V.VASCONCELOS (NA)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 16, 2020 _____ in the county of _____ St. Clair _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (v)(I) | Attempt to Transport Illegal Aliens and Conspire to do same |

This criminal complaint is based on these facts:

On or about March 16, 2020, in the Eastern District of Michigan, Southern Division, Defendant Tulio Da Mata VASCONCELOS, did knowingly and in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, attempted to transport or move such aliens within the United States, in furtherance of such violation of law, in violation of 8 USC 1324 (a)(1)(A)(ii); and did engage in a conspiracy to commit the preceding act, in violation of 8 USC 1324(a)(1)(A)(v)(I).

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James Louks, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

_____
*Judge's signature*

Date: _____ April 29, 2020 _____

City and state: _____ Michigan _____

U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT

1. I, James Louks, am a Border Patrol Agent with the United States Border Patrol, and have been since August 17, 2009.  As a U.S. Border Patrol Agent, I am tasked with detecting, preventing, and apprehending undocumented aliens, smugglers of aliens, and illegal narcotics by maintaining surveillance and/or patrolling the international border with the United States and Canada.  I make this affidavit in support of a finding of probable cause that, on March 16, 2020, Defendant Tulio Da Mata VASCONCELOS committed violations of Title 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(I) (Relating to the Illegal Transportation of Aliens). This affidavit is based upon my personal knowledge, information provided by other law enforcement officers, and record checks of law enforcement and Department of Homeland Security databases. This affidavit may not contain all the information gathered during the investigation of this incident.

2. On March 16, 2020, Marysville Border Patrol Agents were working in Algonac, Michigan due to the recent smuggling activity in the area.  Algonac has historically been a popular drop-off location for alien smugglers.  For about two and a half miles, Algonac borders the intersection where the north and south channels of the St. Clair River meet that connect the main body of Lake St. Clair with Lake Huron.  It is approximately 1000 feet from Algonac to the international boundary with Canada in the center of the river and approximately 2500 feet to Walpole Island in Canada.  Walpole Island is a known waypoint for alien smugglers.  From there, small boats often ferry individuals under cover of darkness across the international boundary into the United States.  Algonac's

proximity to Walpole Island, its lengthy border with the St. Clair River, and a number of canals that can accommodate small boats ensures its continued use by smugglers.

3. During the evening of March 16, 2020, Border Patrol Agents made notice of a white BMW sports utility style vehicle (SUV) with a Massachusetts registration driving in the area apparently aimlessly for multiple hours. At approximately 11:00pm an agent advised that he saw this same white SUV turn around near the Big River Grill parking lot. The Big River Grill is a closed restaurant on the St. Clair River and has been the drop off point for several recent smuggling events in the Algonac area.

4. At approximately 11:15pm, an agent was parked near the City of Algonac Public Boat Access site in an unmarked vehicle when the white BMW SUV parked next to him. The agent was able to obtain the license plate, and a check of the plate showed the registered owner of the vehicle to be Tulio Da Mata VASCONCELOS, with an address on Waverley Street in Framingham, Massachusetts.

5. After approximately ten minutes, the BMW began driving westbound on Smith Street in Algonac, Michigan for approximately three blocks before it turned northbound on State Street. At that time, a St. Clair County Sheriff's deputy performed a traffic stop near the intersection of State and Golfview Streets. St. Clair County Sheriff's dispatch requested assistance from the United States Border Patrol on his traffic stop. Deputy T. O'Donnell advised that he had two subjects in the vehicle only speaking in the Portuguese Language and that the

driver had presented him with a Canadian Driver's License. Border Patrol agents responded to the deputy's location to assist.

6. Agents questioned the driver as to the reason he and his passenger had been loitering in the area for the past few hours. The driver, identified as Tulio Da Mata VASCONCELOS, stated he and his passenger had just driven from Massachusetts to visit the Algonac area. VASCONCELOS stated that he has no particular reason to visit Algonac, he just wanted to. VASCONCELOS also stated he has no family or friends in Michigan. Agents found this suspicious and questioned VASCONCELOS as to how long he had been driving since they had left Massachusetts, to which VASCONCELOS stated that it had been several days. VASCONCELOS was not in possession of any personal belongings, a change of clothes, or personal hygiene products.

7. Agents also questioned the passenger, later identified as Suellen GOMES-Cupertino. GOMES stated that she was a citizen of Brazil and had no immigration status to be in the United States legally. GOMES also stated she had been travelling with VASCONCELOS for approximately one week from Massachusetts. GOMES did have a duffle bag full of personal effects consistent with someone who was traveling. Due to GOMES readily admitting to being present in the United States illegally, agents then questioned VASCONCELOS as to his current immigration status and citizenship. VASCONCELOS claimed to be a citizen of Brazil and had no immigration papers or documents allowing him to be in or remain in the United States legally.

8. Record checks were run through KAK 700 Detroit Sector Communications, and confirmed that VASCONCELOS had no legal status to be in the United States. Agents placed VASCONCELOS and GOMES under administrative arrest pursuant to the Immigration and Nationality Act, and transported them to the Marysville Border Patrol Station for further processing.

9. Meanwhile, at approximately 11:30pm, a Marysville Border Patrol agent had observed two individuals walking down the street near the intersection of M-29 and Sherwood Lane in Algonac, just three quarters of a mile away from an area where an illegal cross border entry had taken place less than one month earlier, and approximately one half mile from the location where the white SUV was pulled over as described above.

10. The agent pulled over to the shoulder of M-29, exited his vehicle and approached the two subjects and asked the two subjects if everything was okay and why they were walking down the street at 11:30pm. One of the subjects, later identified as Luis Carlos RIDOLFI, said that they were going to a friend's house, but RIDOLFI could not provide an actual location and just stated it was somewhere in the area. The agent questioned RIDOLFI as to his citizenship, to which he answered that he was a citizen of Brazil. The agent asked RIDOLFI if he had any immigration documents in his possession that would allow him to be in the United States legally. RIDOLFI stated that he did not and that he was just dropped off by a boat five minutes prior and had entered illegally from Canada. The agent also questioned the second subject, later identified as Irani CORREA, as to her current immigration status and citizenship. However, CORREA acted like she did not

speak English and didn't answer the question. RIDOLFI stated that both of them crossed together in the same boat from Canada and were just dropped off at a dock near a restaurant close by. (The aforementioned Big River Grill is approximately three quarters of a mile from the location where RIDOLFI and CORREA were encountered.) Both subjects provided their Brazilian passports for identification. At that point, the agent placed both subjects under administrative arrest pursuant to the Immigration and Nationality Act and requested a marked Border Patrol vehicle to respond to his location for transport to the Marysville Border Patrol Station.

11. Information from interviews with RIDOLFI and CORREA revealed that RIDOLFI had never met or communicated with VASCONCELOS before coming to the United States. RIDOLFI stated that an individual in Canada had given them Tulio's name and phone number with instructions to contact Tulio upon arrival in the United States. Specifically, they had given a photo and cell phone number of a person called "Tulinn" (a nickname with the connotation "Little Tulio"). Tulinn who would be the one to pick them up in the United States. RIDOLFI and CORREA had their pictures taken and sent to Tulinn so he would recognize them. They were both instructed that Tulinn would be driving a big white Hyundai, and would be taking them further on their journey into the United States. RIDOLFI claimed he was to be driven to New York where he would find other transportation to Florida. CORREA stated she was to be taken to Massachusetts.

12. Agents applied for and received a search warrant for the cell phones seized from VASCONCELOS, RIDOLFI and CORREA.  The contents of the phones were examined and reveal that Tulio VASCONCELOS's phone number is contained in both RIDOLFI's and CORREA's phones under contacts labeled "Tulinn Motorista."  Additionally, both RIDOLFI's and CORREA's phones contains texts and voice messages with VASCONCELOS on March 16, 2020 at the time of smuggling.  These texts and voice messages coordinate pickup instructions between all parties.  One text from VASCONCELOS to CORREA at 10:30 pm says "Have you arrived there?"  The response from CORREA says "We're coming," followed by another at 10:59 asking "What kind of car and color?"  VASCONCELOS answers at 11:00 pm "White, When I see you guys I'm going to stop," and also sends a voice message to CORREA stating "When you get off the boat, cross the road and go walking to the left. Be careful."  Later a voice message from RIDOLFI to VASCONCELOS says "Where are you we have been walking for one kilometer?"

13. Additionally, RIDOLFI's phone contained logs of two attempted calls through the *What'sApp* application to VASCONCELOS's phone during the time of the smuggling occurrence.

14. Based on the foregoing, the affiant has probable cause to believe that Tulio Da Mata VASCONCELOS, did knowingly and in reckless disregard of the fact that aliens Irani CORREA and Luis Carlos RIDOLFI had come to, entered, or remained in the United States in violation of law, attempt to transport or move both individuals within the United States, in furtherance of such violation of law,

in violation of 8 USC § 1324(a)(1)(A)(ii); and did engage in a conspiracy to

commit the same, in violation of 8 USC § 1324(a)(1)(A)(v)(I).

James Louks
Border Patrol Agent

Dated: 04/28/20 20

Sworn to before me and subscribed in my presence and/or by reliable electronic means on this
_____ day April, 2020.        April 29, 2020

U.S. Magistrate Judge
Detroit, Michigan